# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHARLES LIVERMORE,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>UNIFUND CCR LLC, PILOT RECEIVABLES MANAGEMENT LLC, DISTRESSED ASSET PORTFOLIO III LLC, and NORTHLAND GROUP INC.,<br><br>　　　　　　　　Defendants. | Case No. 17-CV-1051-JPS<br><br>**ORDER** |

**1.　　INTRODUCTION**

Plaintiff filed this class action on July 31, 2017. (Docket #1). He sued Defendants Unifund CCR LLC ("Unifund"), Pilot Receivables Management LLC ("Pilot"), and Distressed Asset Portfolio III LLC ("DAP") for their part in sending him, and members of the putative class, allegedly confusing debt collection letters. *Id.* Plaintiff brings claims under the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA"). *Id.* All Defendants save Northland Group Inc. ("Northland") moved to dismiss Plaintiff's Complaint on September 14, 2017 (the three moving defendants hereinafter referred to as "Defendants"). (Docket #13). That motion was mooted by the filing of Plaintiff's Amended Complaint on September 20, 2017. (Docket #17). The new pleading did not assuage Defendants' concerns, however, as they promptly filed another motion to dismiss on October 4, 2017. (Docket #19). That motion is now fully briefed. (Response,

Docket #23; Reply, Docket #28). For the reasons stated below, the motion must be granted.

## 2. STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6). FRCP 12(b)(1) allows for dismissal of actions over which the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). FRCP 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. *Id.* 12(b)(6). In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [his] favor[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016) (citation omitted); *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008).

To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted). However, a complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

## 3. RELEVANT FACTS

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in his favor, the relevant facts are as

follows. Plaintiff defaulted on a Citibank credit card account. On March 17, 2016, United Collection Bureau, Inc. ("UCB") sent Plaintiff a collection letter regarding the debt. (Docket #17-1).[1] UCB's letter states that "CITIBANK, N.A." was Plaintiff's creditor. *Id.* It further states that Plaintiff's balance was $19,552.10 and that interest may accrue on that balance. *Id.*

On June 15, 2016, Northland sent Plaintiff a similar letter. (Docket #17-2). The letter identified Citibank as Plaintiff's creditor and provided a current balance of $19,844.39. *Id.* Northland sent another letter to Plaintiff on July 19, 2016 with the same information. *Id.* More letters came for August through November 2016. (Docket #17-3). Each of those letters provided a new balance of $19,840.37. *Id.*

On May 30, 2017, Citibank wrote to Plaintiff, informing him that his delinquent credit card account had been sold to Pilot. (Docket #17-4). The May 30 letter listed the balance as $19,548.08. *Id.* On June 15, 2017, Plaintiff received a letter from Unifund. (Docket #17-5). Unifund claimed that DAP, not Pilot, was the current owner of the debt. *Id.* Apparently, between May 30 and June 15, Pilot sold the debt to DAP. The balance on Unifund's letter was the same as that provided by Citibank—$19,548.08. *Id.* Unifund further identified Citibank as the original creditor and provided an address for Citibank in Sioux Falls, South Dakota. *Id.*

Plaintiff finds a number of faults in this barrage of collection notices. First, the differing balances were confusing, in that they went up and down without Plaintiff having made a payment since September 2015. Second,

---

[1] Plaintiff has attached copies of the letters referenced in his Amended Complaint as exhibits to that pleading. The Court can therefore consider the letters as part of its decision on the motion to dismiss without converting the matter to one of summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Unifund's letter identified the debt amount as the "Balance Placed." *Id.* Plaintiff alleges that this leaves open the possibility that some other portion of the debt was not "placed" with Unifund. Third, the May 30 and June 15, 2017 letters, taken together, do not clearly identify whether Pilot or DAP owned Plaintiff's debt. Plaintiff believes that although Unifund, DAP, and Pilot are all affiliates, DAP never owned the account. Finally, Plaintiff says that including Citibank's address in the June 15 letter was a deliberate attempt to mislead consumers into sending disputes about their debts to Citibank itself. This would be fruitless, of course, because Citibank no longer owned the debt. Also, inclusion of Citibank's address may lead consumers to erroneously direct payment to Citibank.

4. ANALYSIS

Plaintiff states his claims against Defendants in five counts. The first three are FDCPA claims. Count One alleges that, in light of the moving balances stated in the various letters throughout 2016 and 2017, all Defendants are liable for either over- or under-stating the amount of Plaintiff's debt. Count Two claims that Unifund attempted to deceive Plaintiff by including Citibank's address on its letter. The address also "overshadowed" the FDCPA-mandated validation notice included in Unifund's letter. Count Three also targets Unifund, stating that its letter misidentified DAP as the owner of the debt.

The final two counts are based on the WCA and are offered as factual alternatives. Count Four alleges that if Pilot was the true owner of Plaintiff's debt, it is liable for Unifund's letter which was sent to collect a debt on Pilot's behalf. In this instance, Pilot would be responsible for Unifund's assertion that DAP owned the debt, when this was false. Count Five states

that if DAP was the true owner, it too bears liability for Unifund's conduct.[2] Here, Unifund did not clarify that the debt had been sold to DAP so soon after Citibank had sold it to Pilot. According to Plaintiff, failing to explain this development constitutes harassment.

Plaintiff also asserts two class claims. These appear to be based on Counts One and Two. (Docket #17 at 17) (The first class is the "Amount of Debt" class, and the second is the "Address of Original Creditor" class). The allegations nonetheless suggest that the class claims have a basis in both the FDCPA and WCA. *Id.*

Defendants' first argument for dismissal is that Plaintiff lacks constitutional standing to proceed on any of the FDCPA claims. If this were true, the Court would lack subject-matter jurisdiction over the claims. Plaintiff, of course, opposes this position. The Court can assume, without deciding, that Plaintiff has adequately alleged standing.[3] Defendants' second argument is that the Amended Complaint fails to state any viable claims for relief against them. The Court agrees, at least in part, and this requires dismissal of those claims. The Court will address each claim in turn.

**4.1  Count One**

Debt collectors are required to truthfully represent the amount of a consumer's debt in their collection letters. *See* 15 U.S.C. §§ 1692e(2)(A), g(a)(1). Plaintiff's allegations do not establish that Defendants violated this rule. Unifund (and not Pilot or DAP) sent one letter to Plaintiff in June 2017 which states a certain balance. Plaintiff does not even attempt to explain

---

[2]Count Five is misidentified as the second "Count IV." (Docket #17 at 16).

[3]The Court will deny as moot Plaintiff's motion for leave to submit a sur-reply, (Docket #29), as it relates only to the standing issue.

how Unifund could somehow be responsible for the balances stated in the prior letters, sent by unaffiliated entities and long before Unifund's involvement with the debt. *See* (Docket #23 at 16-19). The Court will not argue the point for him. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

Count One is tied solely to the differing balances of the other letters. Plaintiff provides no support for imposing liability on Unifund for the actions of its predecessors-in-interest on the debt. Further, Plaintiff does not allege that the balance in Unifund's letter was inaccurate for some other reason, such as his recollection that the balance was less. For these reasons, Count One does not state a viable claim for relief.[4]

### 4.2    Count Two

Debt collectors are required to provide notice of certain rights in their first written communication to a consumer, generally referred to as the "validation notice." 15 U.S.C. § 1692g(a); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). These include the right to a thirty-day period in which a consumer may offer a written dispute of the debt, and a right to request the name and address of their original creditor. *Id.* § 1692g(b). Section 1692g(b) further protects these rights, stating that "[a]ny collection activities and communication[s] during the 30-day period may not overshadow or be

---

[4]As noted above, Plaintiff's factual allegations mention a concern with the "Balance Placed" language in Unifund's letter. *See* (Docket #17 at 7). This allegation is not connected to any particular count. *See id.* at 14-17. Defendants seem to believe that it is subsumed within Count One, and argue that the concern is illusory. (Docket #20 at 16). Plaintiff makes no attempt to defend the "Balance Placed" theory in the argument portion of his response. (Docket #23 at 16-25). The Court can thus reject it without deciding which count it should fall within.

inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.*

Unifund's letter included the validation notice. (Docket #17-5 at 2). Plaintiff maintains that the notice was overshadowed by Unifund's inclusion of Citibank's address on the letter. In his view, "[p]roviding [Citibank's] address indicates to the unsophisticated consumer that [Citibank] still was involved in collecting the debt. Such conduct overshadows the validation notice by directing payments, time-limited disputes and other communications to the wrong parties." (Docket #23 at 19).

Plaintiff's theory fails in light of the standard applied to such claims. FDCPA claims are assessed from the perspective of the "unsophisticated consumer." As the Seventh Circuit explains,

> [a]lthough the hypothetical unsophisticated consumer is not as learned in commercial matters as are federal judges, he is not completely ignorant either. On the one hand, the unsophisticated consumer may be uninformed, naive, or trusting, but on the other hand the unsophisticated consumer does possess rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences. Additionally, while the unsophisticated consumer may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion. If not even a significant fraction of the population would be misled by the debt collector's letter, then dismissal is required. In short, the unsophisticated consumer is not the least sophisticated consumer.

*Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273-74 (7th Cir. 2014) (citations and quotations omitted).

Plaintiff's reading of Unifund's letter does not comport with the unsophisticated consumer standard. At the outset, the letter identifies Unifund as the sender and provides its Ohio address. (Docket #17-5 at 2) (Unifund logo and address at the top-right). In the first sentence of the body text, Unifund explains that it is currently servicing the account. *Id.* The second body paragraph is the validation notice, which directs Plaintiff to contact "this office," namely Unifund, with regard to any disputes. *Id.* A number of informational line-items are located above the body text:

```
Original Creditor Account Number: [REDACTED]7220
Original Creditor: CITIBANK, NA
Original Creditor Address: CITIBANK CUSTOMER SERVICE PO BOX 6500, SIOUX FALLS, SD 57117
Current Creditor to Whom the Debt is Owed: DISTRESSED ASSET PORTFOLIO III, LLC
Balance Placed: $19,548.08
Original Creditor Last Payment Date: 09/01/2015
```

*Id.* Citibank's address is clearly listed as the address of the original creditor, as distinct from the "Current Creditor to Whom the Debt is Owed," DAP, or Unifund's address. Even an unsophisticated consumer, reading the entire letter, would not reasonably believe that a dispute should be sent to Citibank. Plaintiff's theory relies on an idiosyncratic, segmented reading of the letter, which *Gruber* teaches must be rejected. In other words, "not even a significant fraction of the population would be misled" by Unifund's letter. *Gruber*, 742 F.3d at 274 (quotation omitted).

In fact, Unifund's letter goes above and beyond its duties as outlined in Section 1692g. Recall that Section 1692g(a) gives a consumer the right to request the name and address of their original creditor. 15 U.S.C. § 1692g(a)(5). Unifund voluntarily provided that information at the outset, without requiring the consumer to formally submit such a request. Unifund cannot be faulted for doing that which the FDCPA otherwise required it to do.

Plaintiff's two arguments to the contrary do not alter the Court's analysis or conclusion. First, Plaintiff cites to a number of opinions addressing overshadowing. None are analogous to the instant case. In each case, the subject letter specifically directed the consumer to contact their original creditor with concerns about the debt. *See, e.g.*, *Macarz v. Transworld Sys., Inc.*, 26 F. Supp. 2d 368, 371 (D. Conn. 1998) ("If there is a legitimate misunderstanding concerning this debt, contact your creditor and discuss it."). In *Green*, the front side of the letter directed the consumer to write to the original creditor "[i]f there is some problem with [the] account that needs to be resolved[.]" *Green v. Universal Fidelity, L.P. et al.*, 13-CV-1119-LA (E.D. Wis. June 19, 2014) (Docket #17 at 2). The back side provided, *inter alia*, the validation notice. *Id.* Judge Adelman observed that the contradictory instructions on each side of the letter—to contact both the creditor and the collection agency—could plausibly confuse the unsophisticated consumer. *Id.* at 6. Here, there are no such contradictory instructions. Unifund's letter does not encourage, much less direct, Plaintiff to send a written dispute to Citibank.

Second, Plaintiff's Amended Complaint notes that the Consumer Financial Protection Bureau ("CFPB") has punished Citibank for related conduct. Namely, Citibank delayed forwarding payments made by consumers on debts which had already been sold to debt buyers. *CFPB Orders Citibank to Provide Relief to Consumers for Illegal Debt Sales and Collection Practices* (Feb. 23, 2016), https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-citibank-to-provide-relief-to-consumers-for-illegal-debt-sales-and-collection-practices/. For two reasons, the CFPB's action provides no support for Plaintiff's overshadowing claim. First, it was directed at Citibank, not Unifund. Again, Unifund cannot be held to

account for Citibank's conduct in the absence of an agency relationship. The sole focus of Plaintiff's overshadowing claim is Unifund's letter, and the letter is not confusing on its face. Second, Citibank and the CFPB entered into an agreement addressing the issue long before Plaintiff filed this action. *See* Citibank, B.A. Consent Order, 2016 CFPBCO 0003, 2016 WL 1078496 (Feb. 23, 2016). Plaintiff's concerns, at least with respect to the CFPB's corrective actions against Citibank, are moot.[5]

### 4.3 Count Three

A collector cannot misidentify a consumer's current creditor in communications with the consumer. *See* 15 U.S.C. §§ 1692g(a)(2). Plaintiff asserts that Unifund's letter is confusing with respect to the identity of his current creditor. Plaintiff bases this claim on the discrepancy between the May 30, 2017 Citibank letter, which says that the debt was sold to Pilot, and the June 15, 2017 Unifund letter, which states that DAP owns the debt. Plaintiff's theory is that it was impossible for Pilot to have transferred the debt to DAP in the two-week span between the Citibank and Unifund letters.

The Court must reject this theory. As the Court explained above, Unifund cannot be held liable for Citibank's conduct. The information Citibank included in its letter has no bearing on whether Unifund's correspondence violates the FDCPA. Unifund's letter clearly identifies DAP

---

[5]Plaintiff also cites Section 1692e as a basis for Count Two. (Docket #17 at 15). This section generally prohibits deceptive or misleading conduct in connection with the collection of a debt. 15 U.S.C. § 1692e. Plaintiff waived the Section 1692e portion of Count Two, as his brief focuses solely on overshadowing under Section 1692g. (Docket #23 at 19-23); *Estate of Moreland*, 395 F.3d at 759. In any event, for the same reasons that Citibank's address does not overshadow the validation notice, it is not misleading or confusing.

as the "Current Creditor to Whom the Debt is Owed." (Docket #17-5 at 2). Pilot is not mentioned anywhere in the letter. *See generally id.* On the face of the letter, there is no confusion.

Plaintiff counters that accepting DAP's ownership of the debt requires the Court to take Defendants at their word, in contravention of the standard of review. Plaintiff's allegation that the transfer had not occurred is made "upon information and belief." (Docket #17 at 8) ("Upon information and belief, Plaintiff's account, which was sold to Pilot, was not owned by [DAP] at the time [Unifund's letter] was mailed to Plaintiff."). This form of pleading is permissible so long as the pleader identifies the factual basis for their belief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011); *Cornielsen v. Infinium Capital Holdings, LLC*, 168 F. Supp. 3d 1033, 1042 (N.D. Ill. 2016).

The only factual basis for Plaintiff's belief is Citibank's letter. However, the letter provides no real support for Plaintiff's belief. It came prior to the transfer from Pilot to DAP and thus has nothing to say about that transaction. If it was conceded, or otherwise established, that the transfer was impossible—that it could not have happened within two weeks—Citibank's letter would lend at least some credence to Plaintiff's belief. This is not the case, though; such transactions, particularly among affiliated entities, can occur in minutes. Plaintiff's belief, then, is based on nothing more than speculation, without any foundation in fact. His allegation is thus not well-pleaded and not entitled to an assumption of truth. *Kubiak*, 810 F.3d at 480 (a claim must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.") (quotation omitted).

Further, the only timely, and thus relevant, statement of debt ownership comes from the Unifund letter, the very letter Plaintiff chose to attach to his pleading. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Plaintiff cannot assert a belief which is refuted by his own evidence.

In the alternative, assuming that the debt was indeed transferred, Plaintiff contends that "the FDCPA would require Defendants to explain to the consumer that the debt was no longer owned by Pilot because it had been reassigned to DAP[.]" (Docket #23 at 23 n.7). Plaintiff cites absolutely nothing in support of this legal proposition. *Id.* The Court cannot accept Plaintiff's bald statement of what the FDCPA would require. On its face, the FDCPA demands that Unifund identify Plaintiff's current creditor. Unifund did so. Accepting Plaintiff's theory would sanction another idiosyncratic reading of Unifund's letter and impose a burden on Unifund found nowhere in the FDCPA's text.

### 4.4 Counts Four and Five

Counts Four and Five, as noted above, are state-law claims brought pursuant to the WCA against Pilot and DAP. With the dismissal of Counts One through Three, no federal claims remain against either of those defendants. The claim remaining against Northland, Count One, has an entirely separate factual basis from the WCA claims, and thus does not form part of the same controversy. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682-83 (7th Cir. 2014) ("Claims form part of the same case or controversy when they 'derive from a common nucleus of operative fact.' *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, . . . (1966)."). The Court

believes it is most prudent, then, to decline to exercise supplemental jurisdiction over Counts Four and Five. 18 U.S.C. § 1367(c)(3).

## 6. CONCLUSION

The thrust of Plaintiff's claims is to hold Defendants liable for the conduct of others over whom they exercised no control. If, for instance, Unifund had sent multiple letters with differing balances, told Plaintiff over the phone to contact Citibank with any disputes, or had somehow misidentified Pilot as the debt owner, each of Plaintiff's FDCPA claims might hold water. As it stands, however, Defendants' single contact with Plaintiff was plain and in full compliance with their FDCPA-mandated duties. Defendants' motion must, therefore, be granted.

Upon review of Defendants' motion, the Court would not have granted Plaintiff leave to amend his complaint. First, he chose not to ask for leave. *See* Fed. R. Civ. P. 15(a)(2); *see generally* (Docket #23). Further, he already amended his complaint once, in response to Defendants' initial motion to dismiss. However, on December 5, 2017, more than a month after Defendants' motion to dismiss was fully briefed, Plaintiff filed a motion for leave to submit a second amended complaint. (Docket #30). He states that he received discovery responses from Unifund on November 8, 2017, and he wishes to amend his pleading to conform to the evidence produced therein. *Id.* at 2.

The Court is troubled by the almost month-long delay between Plaintiff's receipt of Unifund's discovery responses and his motion for leave to amend. Nonetheless, in light of the extremely liberal standard applied to amendment of pleadings, the Court will permit Plaintiff to offer a second amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & N.W. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). The Court will deny

believes it is most prudent, then, to decline to exercise supplemental jurisdiction over Counts Four and Five. 18 U.S.C. § 1367(c)(3).

## 6. CONCLUSION

The thrust of Plaintiff's claims is to hold Defendants liable for the conduct of others over whom they exercised no control. If, for instance, Unifund had sent multiple letters with differing balances, told Plaintiff over the phone to contact Citibank with any disputes, or had somehow misidentified Pilot as the debt owner, each of Plaintiff's FDCPA claims might hold water. As it stands, however, Defendants' single contact with Plaintiff was plain and in full compliance with their FDCPA-mandated duties. Defendants' motion must, therefore, be granted.

Upon review of Defendants' motion, the Court would not have granted Plaintiff leave to amend his complaint. First, he chose not to ask for leave. *See* Fed. R. Civ. P. 15(a)(2); *see generally* (Docket #23). Further, he already amended his complaint once, in response to Defendants' initial motion to dismiss. However, on December 5, 2017, more than a month after Defendants' motion to dismiss was fully briefed, Plaintiff filed a motion for leave to submit a second amended complaint. (Docket #30). He states that he received discovery responses from Unifund on November 8, 2017, and he wishes to amend his pleading to conform to the evidence produced therein. *Id.* at 2.

The Court is troubled by the almost month-long delay between Plaintiff's receipt of Unifund's discovery responses and his motion for leave to amend. Nonetheless, in light of the extremely liberal standard applied to amendment of pleadings, the Court will permit Plaintiff to offer a second amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & N.W. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). The Court will deny

Plaintiff's current motion for leave to amend (Docket #30) without prejudice. It expects that Plaintiff will carefully edit his pleading in light of the Court's rulings above and excise any claims for which amendment would be futile. The Court further notes that, contrary to Plaintiff's assertion, this lawsuit is not in an early stage. Absent truly exceptional circumstances, no further amendments will be permitted.

Plaintiff will be permitted until **December 22, 2017** to file a new motion for leave to amend his complaint. If he does not do so, the Court will promptly effectuate dismissal of the appropriate claims. This means that Counts One, Two, and Three of the Amended Complaint will be dismissed with prejudice as to Defendants. The state-law claims encompassed in Counts Four and Five will be dismissed without prejudice. The Court will also dismiss the class claims with respect to Defendants. The only claims remaining in this case would be Count One and the class claims as against Northland.[6]

Accordingly,

**IT IS ORDERED** that Defendants Unifund CCR LLC, Pilot Receivables Management LLC, and Distressed Asset Portfolio III LLC's motion to dismiss (Docket #19) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply (Docket #29) be and the same is hereby **DENIED as moot**;

---

[6]There is at least a facial discrepancy between the debt amounts listed on Northland's letters, and so the analysis of Count One as to Unifund does not foreclose the claim. The Court will not, therefore, dismiss the claim against Northland *sua sponte*. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (Docket #30) be and the same is hereby **DENIED without prejudice;** and

**IT IS FURTHER ORDERED** that Plaintiff shall file a new motion for leave to amend his complaint on or before **December 22, 2017**, or the Court will dismiss various claims of the Amended Complaint in accordance with the terms of this Order.

Dated at Milwaukee, Wisconsin, this 15th day of December, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge